Robert P. Haney (NJ Bar No. 03345-1987)
C. William Phillips
Christopher Y. L. Yeung
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
cphillips@cov.com
rhaney@cov.com
cyeung@cov.com
Tel: (212) 841-1000
Fax: (212) 841-1010

*Attorneys for Plaintiff Public Service
Electric and Gas Company*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK VICINAGE

| | |
|---|---|
| PUBLIC SERVICE ELECTRIC AND GAS COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> NEWPORT ASSOCIATES DEVELOPMENT COMPANY and NEWPORT ASSOCIATES PHASE I DEVELOPERS LIMITED PARTNERSHIP, <br><br> Defendants. | Civil Action No. _____ <br><br><br> **COMPLAINT** |

Plaintiff Public Service Electric and Gas Company ("PSE&G" or "Plaintiff"), by and

through his undersigned counsel, for its Complaint against Defendants Newport Associates

Development Company and Newport Associates Phase I Developers Limited Partnership

(collectively, "Newport") alleges as follows:

## NATURE OF THE ACTION

1.      PSE&G seeks an injunction directing Newport to remove the multi-ton segments of concrete and other debris currently resting on the riverbed of the Newport Marina Basin in violation of PSE&G's 30 foot-wide subsurface easement so that one or more high-voltage electrical cables that is leaking dielectric fluid into the Hudson River can be accessed, investigated, and repaired.

2.      Pursuant to a permanent easement granted in 1987 by Newport, PSE&G possesses a 30 foot-wide right-of-way on Newport's property north of the Sixth Street Pier to operate, inspect, and repair two high-voltage electric cables that were installed in the riverbed in the easement area (the "Cables").  These Cables, which PSE&G jointly owns with the Consolidated Edison Company of New York, Inc. ("Con Edison"), transport electricity between New Jersey and New York City.

3.      PSE&G recently learned that one or more of the Cables was leaking dielectric fluid into the Hudson River.  While PSE&G and Con Edison responded immediately to address this emergency, Newport is blocking efforts to locate and stop the leak.

4.      As the investigation into the fluid leak has progressed, the reasons for Newport's obstructionist behavior have become clear.  Information obtained during the investigation has revealed that Newport's negligent and intentional acts and omissions are the cause of the fluid leak.  Among other things, divers have discovered more than 200 tons of large concrete segments and other debris that have either fallen or been pushed from the Sixth Street Pier owned by Newport, into PSE&G's easement area, and onto the riverbed directly on top of the Cables, where upon information and belief, the concrete and other debris caused damage to the Cables.

2

5.   Newport is now exacerbating the harm by prohibiting the removal of the concrete segments and other debris from the easement area.  The concrete segments and other debris cut off access to the Cables, and thus prevent any effort to inspect or repair the Cables.  As a result, the leak cannot be fixed, and dielectric fluid continues to leak into the Hudson River.

6.   PSE&G brings this action for injunctive relief to direct Newport to remove the concrete and other debris so that the leak can be located and stopped.  Newport also should be held liable for any damage that it caused.

## THE PARTIES

7.   Plaintiff PSE&G is a New Jersey corporation with its principal place of business located at 80 Park Plaza, Newark, New Jersey.

8.   Defendant Newport Associates Development Company is a New Jersey general partnership with its principal place of business located at 111 Town Square Place, Suite 1505, Jersey City, New Jersey 07310.

9.   Defendant Newport Associates Phase I Developers Limited Partnership is a New Jersey limited partnership.  Upon information and belief, its principal place of business is located at 111 Town Square Place, Suite 1505, Jersey City, New Jersey 07310.

10.   Defendants Newport Associates Development Company and Newport Associates Phase I Developers Limited Partnership are both companies within the LeFrak Organization, Inc., one of the largest real estate development companies in the New Jersey and New York areas.

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1333, and 33 U.S.C. § 2717(b).  PSE&G has asserted claims for relief that arise under the Oil Pollution Act of 1990 ("OPA90"), 33 U.S.C. § 2701 *et seq.*  Accordingly, this

3

Court has jurisdiction under 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b). This case also involves activity that occurred on the navigable waters and that has a connection with maritime activity, thus coming within the maritime jurisdiction of this Court pursuant to 28 U.S.C. § 1333.

12.      PSE&G's state law claims arise out of the same case or controversy as its federal law claims, as all claims in this action arise out of a common nucleus of operative facts. Thus, this Court also has supplemental jurisdiction over PSE&G's state law claims under 28 U.S.C. § 1367.

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), and 33 U.S.C. § 2717(b), because both parties reside in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

A.      **Newport Grants PSE&G an Easement to Use Newport Property North of Newport's Sixth Street Pier for Submerged Electrical Cables.**

14.      Newport owns land in and around the Newport Marina in Jersey City, New Jersey, including the Sixth Street Pier and the underwater lands adjacent to the pier. PSE&G possesses a right-of-way on Newport's underwater land north of the Sixth Street Pier pursuant to a "permanent third (30) foot wide non-exclusive subsurface easement" that Newport granted to PSE&G, dated January 1, 1987 (the "Easement"). Ex. 1.

15.      PSE&G and Con Edison jointly own two high-voltage electric cables that are installed in Newport's underwater land north of the Sixth Street Pier, within the area covered by the Easement. The Cables were installed in the Easement area at varying depths below the riverbed, run the width of the Hudson River into New York, and transmit electrical power between New Jersey and New York City.

16.     The Easement grants PSE&G a right-of-way to inspect, operate, and repair the Cables, among other rights and privileges, within the 30 foot-wide easement area:

> [NADC] . . . do[es] hereby grant unto [PSE&G] . . . a permanent third (30) foot wide non-exclusive subsurface easement as a right-of-way, with all the rights and privileges herein granted, for the purpose of constructing, reconstructing, operating, inspecting, repairing, protecting, removing, replacing, relaying and maintaining perpetually thereon a maximum of three (3) underground lines for transmitting electrical energy, together with manholes, one (1) above ground pad rectifier, all necessary fittings, signs, appurtenances, and facilities, in, under, along, through and across said right-of-way being situate in the City of Jersey City, County of Hudson and State of New Jersey . . . .

Ex. 1.

**B.      PSE&G and Con Edison Respond Immediately to a Reported Fluid Leak in the Newport Marina in October 2016.**

17.     In or around October 3, 2016, a possible leak was reported in the Newport Marina area.

18.     It was determined that the leak originated from one or more of the Cables, and consisted of dielectric fluid—a synthetic oil used *inter alia* to insulate, cool, and protect the Cables against corrosion.

19.     PSE&G and Con Edison immediately launched emergency efforts. Among other things, structural engineers, electrical engineers, and divers were dispatched to the Newport Marina to investigate and repair the leak, and to clean the site.

20.     PSE&G and Con Edison also entered into a short-term access agreement with Newport, which expired on October 19, 2016, for access to Newport property to address the emergency.

21.     On October 6, 2016, the United States Coast Guard notified PSE&G that PSE&G may be a "responsible party" under the Oil Pollution Act of 1990 ("OPA90") and

potentially was liable for "among other things, removal costs and damages resulting from this incident." Ex. 2.

22.     Also on October 6, 2016, the New Jersey Department of Environmental Protection ("NJDEP") issued a Field Directive to PSE&G to, among other things, "[l]ocate and terminate  discharge from transmission line into Hudson River," and "[c]ontain and recover oil discharge in Newport Marina (Hudson River)." Ex. 3.

### C.     Newport Concrete and Debris in the Easement Area Obstruct Emergency Efforts to Repair the Leak.

23.     Starting in or around mid-October 2016, divers discovered enormous concrete segments, rip-rap, and other debris (including boulders, brick, and asphalt) that were resting on the riverbed within PSE&G's 30 foot-wide Easement area.  At present, the largest known segment of concrete is estimated to weigh about 35 tons, but the investigation is ongoing. In total, the concrete currently is estimated to weigh at least 200 tons.

24.     The figure below illustrates the approximate locations of the first concrete segments that have been excavated and uncovered in the Easement area:



Sonographic and bathymetric imaging of the Easement area shows that additional concrete segments extend along the full length of pier, where PSE&G's Easement is located.

        25.    Upon information and belief, Newport caused the concrete segments and other debris to fall into the Easement area, and onto the riverbed above the Cables.  For example, portions of the northern seawall of the Sixth Street Pier owned by Newport collapsed at least twice in the past eight years: once in 2008, and once in 2009.  Upon information and belief, these collapses caused concrete segments and debris to fall off of the Sixth Street Pier, into the Easement area, and onto the riverbed on top of the Cables.

        26.    Newport has conceded that the concrete segments and at least some of other debris in the Easement area are the result of collapses of the Sixth Street Pier.  On October 18, 2016, PSE&G notified Newport that "due to multiple collapses of Newport's adjacent [Sixth

7

Street] pier, large concrete segments and other debris, including boulders, concrete, brick and asphalt, are located on top of the [electric] feeder cables." Ex. 4. To date, Newport has never denied that the multi-ton concrete segments discovered underwater in the Easement area got there as a result of collapses of the Sixth Street Pier.

27.     In addition, upon information and belief, Newport caused additional debris to be pushed, dropped, or otherwise placed into the Easement area, and onto the riverbed above the Cables, potentially as part of an effort to stabilize the Sixth Street Pier. Indeed, debris removed from the water is identical to the debris currently stacked neatly around the Sixth Street Pier.

28.     Until the concrete segments and other debris are removed, they prevent the inspection and repair of the Cables, among other things. Thus, until they are removed, the concrete segments and other debris will cause additional damage to the Cables and the surrounding area.

**D.      Newport Prohibits Further Efforts to Investigate and Stop the Leak.**

29.     During the course of PSE&G's and Con Edison's emergency response, significant questions arose concerning the stability of Newport's Sixth Street Pier. For example, in addition to the two pier collapses confirmed by Newport, emergency workers noticed that the berm on the pier was cracked, and that the crack was expanding. In addition, a bowing of the sheet wall was identified.

30.     On November 1, 2016, Newport's outside counsel informed PSE&G and Con Edison that "no further work will be permitted on the Sixth Street Pier or in the Marina Basin" until engineers could agree to a pier-stabilization plan and the parties could agree to a long-term access agreement for the continued use of Newport's property. Ex. 5.

31.     In response, PSE&G and Con Edison advised Newport that they "must continue the on-water oil recovery operations to protect the environment in accordance with governmental orders," but that all other operations would cease in accordance with Newport's demand, which "has the effect of hampering and delaying the investigatory and repair efforts." *Id.*

32.     Newport continued to block efforts to access, locate, and stop the leak.  In response to PSE&G and Con Edison, Newport stated that while on-water fluid recovery efforts could continue, "all other activities such as removing concrete and debris from the subsurface, taking borings through the pier and filling in fissures in the berm have got to cease."  *Id.*

33.     On November 10, the Coast Guard issued an order directing PSE&G to undertake several enumerated actions to remediate the leak by December 1, 2016.  Ex. 6.

34.     On-water activities to clean up dielectric fluid that has leaked into the Hudson River continue.

35.     Newport continues to prohibit efforts to remove the concrete segments and other debris from the Easement area.  As a result, the concrete segments and other debris remain on the riverbed above the Cables, and it is impossible to access, inspect, or repair the Cables.

## COUNT I
## INJUNCTIVE RELIEF
### (Violation of Easement)

36.     Plaintiff repeats each of the foregoing allegations as though fully set forth at length herein.

37.     As detailed above, the Easement does "grant unto [PSE&G] . . . a permanent third (30) foot wide non-exclusive subsurface easement as a right-of-way" for the purpose of, among other things, "operating, inspecting, [and] repairing" the Cables.  Ex. 1.

38.     Newport violated, and continues to violate, the Easement because the presence of the concrete segments and debris obstructs PSE&G's right-of-way with respect to the Cables, and denies PSE&G all access to the Cables within the Easement area. The concrete segments and other debris are in the Easement area without PSE&G's consent, and their presence unreasonably interferes with PSE&G's rights under the Easement.

39.     PSE&G has suffered, and will continue to suffer, irreparable harm as a result of Newport's violation of the Easement. PS&G also has suffered, and will continue to suffer, damages in an amount to be determined at trial.

40.     PSE&G has no adequate remedy at law.

41.     A permanent injunction enjoining Newport from interfering with PSE&G's rights under the Easement and directing Newport to remove the concrete segments and other debris from the Easement area advances the public interest.

42.     The burden on Newport, if any, imposed by such an injunction is substantially outweighed by the potential burden on the public and on PSE&G absent such an injunction.

**COUNT II**
**INJUNCTIVE RELIEF**
**(Trespass and Nuisance)**

43.     Plaintiff repeats each of the foregoing allegations as though fully set forth at length herein.

44.     As detailed above, PSE&G has a property interest in the Cables.

45.     Upon information and belief, Newport caused concrete segments and other debris to fall into the Easement area, and onto the riverbed above the Cables.

46.     Upon information and belief, one or more of the Cables were damaged due to physical contact resulting from the fallen concrete segments and other debris.  PSE&G did not authorize such contact, and such contact constitutes a trespass onto PSE&G's property.

47.     The presence of the concrete and other debris in the Easement area continues to damage the Cables by causing unauthorized physical contact.  Thus, Newport is continuing to trespass on PSE&G's property.

48.     Newport's continuous acts of trespass qualify as a nuisance.

49.     PSE&G has been harmed, and continues to be harmed, by Newport's trespass and nuisance.  PSE&G also has suffered, and will continue to suffer, damages in an amount to be determined at trial.

50.     PSE&G has no adequate remedy at law.

51.     A permanent injunction enjoining Newport from interfering with PSE&G's rights under the Easement and directing Newport to remove the concrete segments and other debris from the riverbed above the Cables advances the public interest.

52.     The burden on Newport, if any, imposed by such an injunction is substantially outweighed by the potential burden on the public and on PSE&G absent such an injunction.

### COUNT III
**(Negligence Under Admiralty Law)**

53.     Plaintiff repeats each of the foregoing allegations as though fully set forth at length herein.

54.     Newport owns the Sixth Street Pier, which is a pier that is along the navigable waters of the United States.

11

55.     Newport's negligence and other culpable conduct caused multiple multi-ton segments of concrete and other debris to fall onto the riverbed above the Cables.  For example, Newport failed to maintain the Sixth Street Pier in such a manner that that would reasonably prevent multiple multi-ton segments of concrete and other debris from falling into the navigable waters and onto the riverbed on top of the Cables.  Newport also intentionally pushed, dropped, or otherwise placed debris into navigable waters and onto the riverbed above the Cables.

56.     In addition, Newport has blocked efforts to remove the concrete segments and other debris, which continue to lie on the riverbed and in navigable waters.

57.     Newport's negligent and intentional acts and omissions have caused, and continue to cause, injury to PSE&G, including by causing damage to one or more of the Cables, causing one or more of the Cables to leak dielectric fluid, preventing the repair of the damaged Cable(s), and causing PSE&G to suffer damages in an amount to be determined at trial.

## COUNT IV
### (Negligence Under New Jersey State Law)

58.     Plaintiff repeats each of the foregoing allegations as though fully set forth at length herein.

59.     As detailed above, Newport's negligent and intentional acts and omissions have caused multiple multi-ton segments of concrete and other debris to fall onto the riverbed on top of the Cables, including from the Sixth Street Pier.  In addition, Newport has blocked efforts to remove the concrete segments and other debris, which continue to lie on the riverbed on top of the Cables.

60.     Newport's negligent and intentional acts have caused, and continue to cause, injury to PSE&G, including by causing damage to one or more of the Cables, causing one

or more of the Cables to discharge dielectric fluid, preventing the repair of the damaged

Cable(s), and causing PSE&G to suffer damages in an amount to be determined at trial.

## COUNT V
## DECLARATORY JUDGMENT
### (Liability Under the Oil Pollution Act of 1990)

61.     Plaintiff repeats each of the foregoing allegations as though fully set forth

at length herein.

62.     As detailed above, the United States Coast Guard has notified PSE&G that

PSE&G may be a "responsible party" under the OPA90 for the leak of dielectric fluid into the

Hudson River.

63.     PSE&G is facing imminent claims of liability.  For example, pursuant to

OPA90, the Coast Guard has ordered PSE&G to undertake several enumerated actions to

remediate the leak by December 1, 2016, and non-compliance could result in fines or penalties.

Some boat owners also already have contacted PSE&G and demanded that PSE&G pay for the

removal of dielectric fluid from their vessels.  Additionally, costs have been incurred, and will

continue to be incurred until at least the fluid leak is stopped, in connection with cleaning up the

fluid that has leaked into the Hudson River and repairing the leak.

64.     OPA90 provides that, if a responsible party "establishes that a discharge or

threat of a discharge and the resulting removal costs and damages were caused solely by an act

or omission of one or more third parties," then "the third party or parties shall be treated as the

responsible party for purposes of determining liability under [OPA90]."  33 U.S.C. §

2702(d)(1)(A).  Additionally, OPA90 provides that "[a] person may bring a civil action for

contribution against any other person who is liable or potentially liable under [the OPA90] or

another law."  33 U.S.C. § 2709.

13

65.     As detailed above, Newport's acts and omissions caused, in whole or in part, the leak of dielectric fluid into the Hudson River.  Therefore, pursuant to 28 U.S.C. § 2201 and 33 U.S.C. § 2702(d)(1)(A), PSE&G is entitled to a declaration that Newport "shall be treated as the responsible party for purposes of determining liability under [OPA90]."   Pursuant to 28 U.S.C. § 2201 and 33 U.S.C. § 2709, PSE&G also is entitled to a declaration that Newport is liable for contribution to PSE&G in connection with any and all liabilities, including damages, that have arisen or will arise in connection with the dielectric fluid leak.

**PRAYER FOR RELIEF**

WHEREFORE, PSE&G respectfully requests that the Court grant the following relief:

1.     Issue an injunction enjoining Newport from interfering with PSE&G's rights under the Easement and requiring Newport to remove all concrete segments and other debris from the Easement area.

2.     Issue a declaratory judgment declaring that Newport shall be treated as the "responsible party" for purposes of determining liability under the OPA90.

3.     Issue a declaratory judgment declaring that Newport is liable to PSE&G for contribution in connection with any and all liabilities, including damages, that have arisen or will arise in connection with the dielectric fluid leak.

4.     Enter judgment in favor of PSE&G and against Newport for damages in an amount to be determined at trial, plus interest.

5.     Award costs and fees in favor of PSE&G and against Newport.

6.     Award such other and further relief in favor of PSE&G as the Court deems just and proper.

COVINGTON & BURLING LLP

By: s/ Robert P. Haney
Robert P. Haney (NJ Bar No. 03345-1987)
C. William Phillips
Christopher Y. L. Yeung
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
rhaney@cov.com
cphillips@cov.com
cyeung@cov.com
Tel:  (212) 841-1000
Fax:  (212)841-1010

*Attorneys for Plaintiff Public Service
Electric and Gas Company*

Dated:  November 11, 2016

15

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, PSE&G certifies that the matter in controversy in this action is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

COVINGTON & BURLING LLP

By: *s/ Robert P. Haney*
Robert P. Haney
(NJ Bar No. 03345-1987)
C. William Phillips
Christopher Y. L. Yeung
The New York Times Building
620 Eighth Avenue
New York, New York 10018-1405
rhaney@cov.com
cphillips@cov.com
cyeung@cov.com
Tel: (212) 841-1000
Fax: (212)841-1010

*Attorneys for Plaintiff Public Service Electric and Gas Company*

Dated:  November 11, 2016