UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**<br>    Plaintiff,<br>  v.<br>**NEWPORT ASSOCIATES DEVELOPMENT COMPANY and NEWPORT ASSOCIATES PHASE I DEVELOPERS LIMITED PARTNERSHIP,**<br>    Defendants. | Civ. No. 16-8445 (KM) (JBC)<br><br>**OPINION & ORDER** |
| **NEWPORT ASSOCIATES DEVELOPMENT COMPANY and NEWPORT ASSOCIATES PHASE I DEVELOPERS LIMITED PARTNERSHIP,**<br>    Counterclaim & Third-Party Plaintiffs,<br>  v.<br>**PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**<br>    Counterclaim Defendant,<br>- and -<br>**CONSOLIDATED EDISON COMPANY OF NEW YORK,**<br>    Third-Party Defendant. | |
| **PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**<br>    Crossclaim Plaintiff,<br>  v.<br>**CONSOLIDATED EDISON COMPANY OF NEW YORK,**<br>    Crossclaim Defendant. | |

1

| |
|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK,**<br>    Counterclaim Plaintiff,<br>    v.<br>**PUBLIC SERVICE ELECTRIC AND GAS COMPANY, NEWPORT ASSOCIATES DEVELOPMENT COMPANY, and NEWPORT ASSOCIATES PHASE I DEVELOPERS LIMITED PARTNERSHIP,**<br>    Counterclaim Defendants. |

**<u>KEVIN MCNULTY, U.S.D.J.</u>:**

This matter comes before the Court on the motion (DE 170) of Defendants and Third-Party Plaintiffs Newport Associates and Development Company and Newport Associates Phase I Developers Limited Partnership (collectively "Newport") to appeal Magistrate Judge Clark's August 26, 2019 opinion and order (the "Order," DE 169), granting in part and denying in part the motion of Third-Party and Crossclaim Defendant and Counterclaim Plaintiff Consolidated Edison Company of New York, Inc. ("Con Edison") for a protective order (DE 145) to prevent Newport from obtaining certain discovery.

I find that Judge Clark did not abuse his discretion and so I affirm the Order substantially for the reasons set forth in his opinion and order.

### I.     Background

Because I write for the parties, I summarize only briefly the facts and procedural history relevant to this appeal.

At issue here are a pair of high-voltage transmission cables knows as the B3402 (the "B Line") and the C3403 (the "C Line") (collectively "the Cables") that are owned by Plaintiff Public Service Electric and Gas Company ("PSE&G") and Con Edison. (DE 169 at 2–3) These Cables are insulated and cooled with a dielectric fluid, a non-toxic synthetic oil. (*Id.*) The Cables are "high-pressure, fluid filled feeders" ("HPFF"), which can be cooled with circulation through the

2

pipe via an external cooling plant. (*Id.* at 3) For our purposes, the Cables run underground in PSE&G's service area in New Jersey from the Hudson and Marion switchyards east to the Jersey City waterfront at the Newport Marina, then continue east, buried directly in the riverbed, across the Hudson River to Manhattan. (*Id.*) Thereafter, the Cables cross the East River to Brooklyn, although the construction of those cables differs, as discussed below. PSE&G and Con Edison were together responsible for constructing and maintaining the cables; the section of the Cables running underwater across the Hudson River, however, was Con Edison's responsibility. (*Id.*) The Hudson River Section, approximately 1 mile in length, extends from the Newport Marina in Jersey City to Pier 25 in Manhattan. (*Id.* at 4)

The Cables that cross the Hudson River Section differ in construction from the East River Section of Cables. The Hudson River Cables are encased in an S-shaped steel pipe placed in a fifteen-foot deep trench in the river bed and are coated externally with coal tar wrap, encased in a one-inch-thick cement jacket, and joined by welded couplers. (*Id.*) By contrast, the East River Cables are not exposed to the river's marine environment because they pass through a utility tunnel. They therefore were constructed differently (lacking, for example, a cement encasement, the coal tar wrap, and welded couplers). (*Id.*)

This action arises from a leak of dielectric fluid in the Hudson River that was discovered on October 3, 2016 by the Newport Marina. (*Id.*) The leak was ultimately found to originate from the B Cable. (*Id.* at 6) PSE&G & Con Edison maintain that this leak was caused by debris hitting the cables from the collapse of the Sixth Street Pier in the Newport Marina. (*Id.* at 5) Newport contends that the leak was caused by the Cables' flawed design and the Utilities' "reckless" failure to maintain, repair, and protect the Cables since their installation. (*Id.* at 7)

After briefing on motions to dismiss, the parties engaged in fact discovery. On July 24, 2018, Judge Clark issued a pretrial scheduling order. (DE 108) The scheduling order called for interrogatories and initial requests for

production of documents to be served by August 31, 2018, with responses due September 30, 2018. Pursuant to paragraph 7, any unresolved discovery disputes were to be brought to the Court's attention no later than October 22, 2018.

On October 18, 2018, Judge Clark amended paragraph 7 of the pretrial scheduling order as follows: "The parties shall raise all discovery disputes of which they are then aware, and which they believe are ripe for the Court's consideration, in their October 22, 2018 joint status letter, described below in Paragraph 8, for resolution at the October 25, 2018 telephonic status conference. With respect to any discovery disputes that subsequently arise or mature, the parties shall promptly meet and confer regarding any such disputes and, if necessary, bring them to the Court's attention." (DE 123)

Accordingly, on October 22, 2018, the parties filed a joint letter outlining several discovery disputes. (DE 124) As it relates to the pending motion, Newport raised the following deficiencies in the Utilities' positions:

- The Utilities' Refusal to Produce Information Related to the Utilities' Other Leaks of Dielectric Fluid: "Newport has requested that Con Edison and PSE&G produce documents concerning "any other discharge of dielectric fluid from any other facility that [the Utilities] own or operate." (Newport's Request for Production No. 8 to Con Edison; Newport's Request for Production No. 9 to PSE&G.)" (*See* DE 124 at 14-15)
- Con Edison's Refusal to Produce the Record Before NYSDEC of Con Edison's Repeated Discharges and False Filings & Con Edison's Refusal to Produce Documents Related to its Compliance with the NYSDEC Consent Decree (*Id.* at 18–21)

The Court then adjourned the October 25, 2018 conference and ordered the parties to submit an updated joint letter outlining any outstanding discovery disputes by December 5, 2018. (DE 125) The parties filed an additional letter outlining outstanding discovery issues on December 5, 2018 (DE 130). That letter added that the parties had an outstanding dispute over Con Edison's refusal to produce "[a]ll Documents concerning the Cables . . .

4

(Newport's Req. for the Produc. of Docs. No. 2 to Con Edison)." (DE 130 at 6–10 (Section II.A))

On December 11, 2018, Judge Clark issued a letter order regarding the parties' discovery disputes. He ordered, in relevant part:

> With respect to Con Edison's refusal to produce certain information related to the cables at issue in this litigation and the Utilities' refusal to produce information related to the Utilities' other leaks of dielectric fluid (Dkt. No. 130 at II.A.); as well as Con Edison's refusal to produce Appendix D and the Record before NYSDEC of Con Edison's repeated discharges and false fillings (Dkt. No. 130 at III.A.), the parties are directed to meet and confer. To the extent that the parties are not able to resolve their issues, Con Edison may file a Motion for a Protective Order regarding the aforementioned matters. PSEG may join Con Edison on their submission or submit its own separate briefing on the matter.

(DE 132) On January 25, 2019, Judge Clark held a conference call in which the parties discussed Con Edison's motion for a protective order. A briefing schedule was ordered on January 28, 2019. (DE 143) The present motion is the result of Con Edison's filing of a motion for a protective order. (*See* DE 145) Newport opposed the motion. (DE 157)

The discovery requests Con Edison sought to limit by protective order fell into three broad categories:

(1) information related to any leaks of dielectric fluid in Con Edison's facilities;

(2) all documents concerning the B and C Cables regardless of their location; and

(3) all documents concerning a consent decree entered into in 1994 which resolved charges against Con Edison brought by the New York State Department of Environmental Conservation ("NYSDEC") for actions including alleged illegal discharges of dielectric fluid into the Hudson River ("the Consent Decree").

(*See* DE 169 at 9) On August 26, 2019, Magistrate Judge Clark issued an opinion and order granting in part and denying in part Con Edison's motion. (DE 169). With respect to category (1), Judge Clark granted in part Con Edison's motion and limited Newport's inquiries to leaks involving HPFF cables and welded couplers. Regarding category (2), Con Edison's motion was granted

5

in part as Con Edison was required to produce the requested information only as to the Hudson River Section of the Cables. Finally, with respect to category (3), Con Edison's request for a protective order as to documents related to the NYSDEC Complaint was granted while the Court granted in part Con Edison's motion with respect to documents about compliance with Appendix D of the Consent Decree.

On September 9, 2019, Newport filed a motion to appeal Magistrate Judge Clark's Order with respect to category (1) and category (2). (DE 170) Con Edison and PSE&G oppose that motion. (DE 174; DE 175)[1]

## II. Discussion

### a. Legal standard

The District Court will reverse a Magistrate Judge's decision on a non-dispositive motion only if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). This Court has frequently spoken of the discretion granted to the Magistrate Judge in non-dispositive matters. Where the appeal seeks review of a matter within the core competence of the Magistrate Judge, such as a discovery dispute, an abuse of discretion standard is appropriate. *See Cooper Hospital/Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998); *Deluccia v. City of Paterson*, No. 09-703, 2012 WL 909548, at *1 (D.N.J. March 15, 2012). "This deferential standard is especially appropriate where the Magistrate Judge has managed this case from the outset and developed a thorough knowledge of the proceedings." *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 214 (D.N.J. 1997) (internal quotations omitted); *see Deluccia*, 2012 WL 909548, at *1 (same).

---

[1]   To avoid misunderstanding, I point out that the Court appointed a Special Discovery Master, Hon. Joel A. Pisano (ret.), by order dated January 22, 2020. (DE 187) The order imposes specialized procedures for decision and review of discovery disputes. This discovery motion and appeal, however, were already pending when that order was entered, so I decide the appeal directly on a "grandfathered" basis, *i.e.,* under the pre-Discovery Master regime.

6

### b. Discovery of Other HPFF Cable Leaks

Newport contends that Judge Clark erred when he limited discovery of other HPFF Cable leaks to those HPFF Cables that had welded couplers. (DE 170-1 at 20–23). Newport avers that this limitation was based on an erroneous view of relevance and did not factor in the burden on Con Edison, which Newport contends is minimal. Regarding relevance, Newport asserts that it has pled many theories in the alternative as to what caused the leak here and thus it is entitled to discovery on each of these alternative theories. (*Id.* at 23–24) For example, Newport alleges that the leak could have been due to a design defect rather than a leak in the couplers or that Newport was negligent in that it failed to service the Cables for 40 years. (*Id.* at 24) Newport further proffers that it was an error as a matter of law for Judge Clark to ignore in his Order Newport's strict liability claims. (*Id.* at 26–27) Finally, says Newport, it will be at an extreme information disadvantage should this discovery order stand. (*Id.* at 28)

Con Edison avers that Newport is seeking discovery concerning all dielectric fluid leaks from all 576 miles of HPFF cable, which cannot be relevant or proportional to this litigation. Any supposed leaks in other HPFF cables must still meet the basic threshold that the facts and circumstances of those leaks be "substantially similar" to those facts at issue here—a threshold that Newport has not met. (DE 174 at 26–28) Moreover, Newport's argument that the Order inhibits its ability to prove its strict liability claims is misguided because these claims are still linked to the HPFF Cables' location in the Hudson River, and documents relevant to the Cables in the Hudson River will be produced. (*Id.* at 25)

It is clear from Judge Clark's Order that he considered the very arguments regarding relevancy and burden that Newport again proffers here and rejected them. (*See* DE 169 at 10–11) In his sound judgment, he found that Newport's unfettered discovery requests for all documents regarding any HPFF leak could not be squared with the scope of this action. The factual basis

for this action is a leak from a specific kind of Cable in the Hudson River that has couplers. Thus, I am not persuaded that information detailing every leak from Con Edison's vast network of cables without limitation is relevant to the specific claims at issue here. Nor am I persuaded that Judge Clark's Order inhibits Newport from pursuing its alternative theories of liability, particularly when it will still be receiving discovery into the design, construction, and maintenance of the B and C Cables in the Hudson River.

I am of course cognizant of the broad scope of relevance under the Federal Rules. Perusing Magistrate Clark's decision, I find it readily apparent that he was cognizant of it as well. I find that Magistrate Judge Clark committed no error of law and acted well within his discretion when he concluded that Newport's request was overly broad such that it was not permitted under Rule 26. I further find that Judge Clark weighed the circumstances and allegations in this case when he imposed a reasoned limitation on this discovery request to "leaks involving HPFF cables and welded couplers." That finding is neither clearly erroneous nor contrary to law, nor is it an abuse of discretion.

### c. Limitation on Discovery Concerning the B & C Cables

In support of its request for all documents related to the Cables, Newport asserts that the Cables are an interconnected system and were maintained as such; therefore, says Newport, any leaks or failures "anywhere" in the system could have caused the leak in the Hudson River Section of the Cables. (DE 170-1 at 29–30) Judge Clark further erred, says Newport, in failing to consider how these documents relate to Newport's other claims, including its application to enjoin violations of certain pipeline regulations. (*Id.* at 35) Finally, Newport asserts that Judge Clark's Order did not specifically describe the burden of production of the documents in the Order. (*Id.* at 37)

Con Edison responds that the Order highlights Judge Clark's careful consideration of the distinctions between the Hudson River section of the Cables and the other sections of the Cables. (DR. 174 at 19–20) Their

construction and installation are markedly different, says Con Edison, such that discovery into those other portions of the Cables has no reasonable bearing on Newport's claims. (*Id.* at 33–35)

Ultimately Judge Clark issued the following order:

The Court agrees with Con Edison that the extensive documentation sought by Newport as to the Cables beyond the Hudson River Section bears little to no relevance to the claims and issues in this matter and that its production would significantly and disproportionately burden Con Edison. This action arises out a discrete leak of dielectric fluid from the B Line in the Hudson River Section of the Cables. The Court fails to understand how information related to sections of the Cables which were designed, constructed, and maintained in a completely different fashion than the section in which the leak at issue occurred will aid the parties and the Court in making a determination as to what caused the leak and which party ultimately bears responsibility. As an example, the Court turns to Newport's request for documents concerning the "manufacture or construction of the Cables or any of their Components." Dkt. No. 145, Sullivan Decl., Ex. A at p. 1. Documents relating to the "components" of sections of the Cables and surrounding infrastructure beyond the Hudson River Section, such as the East River Section of the Cables, which are installed in a utility tunnel, are not encased in cement jackets or coated in coal tar wrap, and are not joined by welded couplers, would be wholly irrelevant to Newport's allegations regarding the cause of the leak at issue. Furthermore, the Court notes that Newport will receive information regarding any previous relevant leaks on the remainder of the Cables in connection with its requests set forth in the previous Category.

This ruling was well within Judge Clark's considerable discretion, and I find no clear error or error of law that would justify reversal. Judge Clark considered the relevance of these documents and weighed what he determined to be minimal relevance against the burden of their production. Moreover, the marginal relevance is significantly diminished by the simple fact that Newport will receive extensive discovery on the relevant portion of the Cables—the Hudson River Section where the leak actually occurred. This discovery includes discovery into the installation, manufacturing, and maintenance of the directly relevant Hudson Cables. Including an injunction request does not carry with it

9

a roving commission to ferret out violations anywhere; it is still limited by the parties' standing and the parameters of the causes of action pled. Judge Clark's reasoned decision to limit Newport's extensively broad requests does not deprives Newport of the ability to, for example, present a claim that the Utilities are in violation of certain regulations concerning the Hudson River Section Cables or their impact on Newport's property.

Accordingly, I find that Magistrate Judge Clark did not abuse his discretion in limiting Newport's discovery request to discovery into the B and C Cable lines in the Hudson River Section. His decision is affirmed.

## ORDER

**ACCORDINGLY**, IT IS this 1st day of May, 2020

**ORDERED** that the appeal (DE 170) from the decision of the Magistrate Judge is **DENIED**, and the opinion and order of the Magistrate Judge (DE 169) is **AFFIRMED**.

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**