UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PUBLIC SERVICE ELECTRIC & GAS COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**NEWPORT ASSOCIATES DEVELOPMENT COMPANY; NEWPORT ASSOCIATES PHASE I DEVELOPERS LIMITED PARTNERSHIP,**<br><br>Defendants. | Civ. No. 16-8445<br><br>OPINION |

This matter comes before the Court on three motions: a motion (DE 231) to strike filed by Consolidated Edison Company of New York ("Con Edison"); a motion (DE 235) to strike filed by Public Service Electric & Gas Company (PSE&G); and a cross motion (DE 240) filed by Newport Associates Development Company and Newport Associates Phase I Developers Limited Partnership ("Newport") for leave to amend its pleading. Having considered the parties' submissions and having heard oral argument, the motions (DE 231, 235) to strike are GRANTED, and the cross motion (DE 240) for leave to amend is DENIED.

### I.   Background

The original complaint was filed in November of 2016. (DE 1.) On December 24, 2020, with consent of all parties, PSE&G filed an amended complaint which reasserted its previously unripe Section 113 CERCLA contribution claim and asserted a breach of contract claim against Con Edison. In response, Newport filed a new answer, counterclaims, and third-party complaint (referred to here as "Newport's Pleading"), which added new allegations about leaks on lines other than the one directly at issue in this

1

case. (DE 226.) PSE&G and Con Edison ("the Utilities") each moved to strike Newport's pleading, arguing that it was filed in violation of Rule 15 and that it circumvents prior limitations on discovery ordered by the Court. Newport opposed these motions and cross moved to amend its answer, third-party complaint, and counterclaims. (DE 240.)

A timeline of the relevant procedural history is as follows:

- <u>Feb. 2, 2018</u>: Newport filed its initial third-party complaint against Con Edison and counterclaims against PSE&G (DE 72)

- <u>May 21, 2018:</u> Newport filed an amended answer, third-party complaint, and counterclaims (DE 98)

- <u>Jan. 28, 2019</u>: The Court granted Con Edison's motion to dismiss Counts IV and V (DE 148)

- <u>Aug. 26, 2019</u>: Judge Clark issued a protective order preventing Newport from seeking discovery related to "leaks of dielectric fluid in Con Edison's facilities," instead limiting discovery to leaks involving welded couplers on HPFF submarine or terrestrial cables (DE 169)
  - <u>May 1, 2020</u>: The Court upheld Judge Clark's decision (DE 191)
  - <u>Jan. 27, 2021</u>: Judge Clark denied Newport's motion for reconsideration (DE 221)

- <u>December 24, 2020</u>: PSE&G filed its second amended complaint and amended crossclaims (DE 219)

- <u>Feb. 5, 2021</u>: Newport filed an answer, counterclaims, and third-party complaint (DE 226)

In short, this is not the first time the parties have disputed the relevance of cables beyond the specific cable at issue in this case. During discovery, Newport requested from Con Edison "documents and information detailing every leak of dielectric fluid from any Con Edison facility, with the exception of leaks originating from self-contained fluid-filled cables, without any geographic or temporal limitations." (DE 169 at 10.) Newport argued that such discovery would shed light on the leak-prone nature of the Cables, the circumstances in which this type of cable leaks, the Utilities' awareness of the risks of leaks, and the likely resultant harm. (DE 157 at 14). Judge Clark limited discovery to

leaks involving high-pressure, fluid-filled ("HPFF") cables and welded couplers (whether submarine or terrestrial). (DE 169 at 11-12.) Newport also requested documents concerning the B and C Line without limitation, arguing that other leaks or failures anywhere on the Cables could have caused the leak at issue. (DE 157 at 25.) Emphasizing that this action arises out of a discrete leak of dielectric fluid from the particular Hudson River Section of the Cables, Judge Clark found as follows:

> Documents relating to the "components" of sections of the Cables and surrounding infrastructure beyond the Hudson River Section, such as the East River Section of the Cables, which are installed in a utility tunnel, are not encased in cement jackets or coated in coal tar wrap, and are not joined by welded couplers, would be wholly irrelevant to Newport's allegations regarding the cause of the leak at issue.

(DE 169 at 13.) Judge Clark therefore held that Con Edison was only required to produce the requested information as to the Hudson River Section of the Cables. (DE 169 at 14.) The Utilities now cite to Judge Clark's ruling to show that allegations regarding leaks on lines outside of the Newport Marina or of leaks not involving HPFF cables and welded couplers are immaterial to the issues surrounding the leak at issue in this litigation. (PSE&G Reply at 11.)

## II. Discussion

### a. Rule 15

Newport argues that because its pleading was filed in response to PSE&G's amended pleading, it did not require leave of the court or consent of the parties under Rule 15. The Utilities argue against the as-of-right approach, and advocate what has been deemed the "moderate approach," discussed below.

Rule 15 governs amended and supplemental pleadings. In relevant part, the Rule provides:

(a) Amendments Before Trial.

3

> (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
>
>> (A) 21 days after serving it, or
>>
>> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> (3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15.

Rule 15 was amended in 2007 and 2009. Rule 15(a) previously contained the phrasing "in response to," which the amendments eliminated.[1] The amendments also abrogated old Rule 13(f), "leaving Rule 15 as the sole rule governing amendments to pleadings." *Berrada v. Cohen*, No. 16574-SDW-LDW, 2017 WL 6513954, at *3 (D.N.J. Dec. 20, 2017), *aff'd*, No. 16574-SDW-LDW, 2018 WL 1837916 (D.N.J. Apr. 17, 2018). Prior to the 2007 and 2009 amendments, courts had adopted different approaches to the permissibility of a response to an amended pleading:

> Courts adopting the "narrow" approach held that an amended counterclaim must respond only to the changes made by the amended complaint. The "moderate" approach provides that an amended counterclaim may be filed without Court leave only if the amended complaint to which it [responds] changed the theory or scope of the case, and, accordingly, the amendments to the

---

[1] Prior to its amendment, Rule 15(a) provided that "[a] party shall plead *in response to* an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading." Fed. R. Civ. P. 15(a) (2006) (repealed 2007) (emphasis added); *Berrada v. Cohen*, 2017 WL 6513954, at *2.

4

> counterclaims must be similar in scope to the amendments made to the complaint. Finally, the permissive approach provides that the defendant always has the right to add new counterclaims when the plaintiff amends the complaint, no matter the scope of those counterclaims.

*Id.* (citations omitted).

In *Slim CD*, decided prior to the 2009 amendment, Judge Wolfson adopted the moderate approach. *Slim CD, Inc. v. Heartland Payment Systems, Inc.*, No. 06-cv-2256, 2007 WL 2459349, *6 (D.N.J. Aug. 24, 2007). As part of the analysis, Judge Wolfson noted that the moderate approach is "consistent with Rule 15's requirement that an amended pleading must 'plead in response' to the amended pleading," *id.*, language not included in the current Rule.

Following the 2007 and 2009 amendments to Rule 15, at least one court has discarded the moderate approach. *See Berrada*, 2017 WL 6513954, at *1 (holding that the primary reason for adopting the various approaches no longer existed after the Rule was amended). Other courts have continued to apply the moderate approach, "finding that the repeal of Rule 13(f) and the substitution of Rule 15(a) does not affect the viability of either the moderate or permissive approaches—though foreclosing the narrower view." *Patel v. Pandya*, No. 14-8127 (WJM), 2016 WL 3129615, at *2 (D.N.J. June 2, 2016) (citations omitted). In *Patel*, plaintiffs filed a motion to strike defendant's counterclaims, arguing that leave was required under Rule 15. *Patel v. Pandya*, No. 14-8127 (WJM), 2016 WL 3129615, at *1 (D.N.J. June 2, 2016). Judge Martini applied the moderate approach, finding that approach is "in line with the Third Circuit's liberal attitude towards amendment, but allow[s] the Court to properly exercise its discretion and deny leave to amend or add new counterclaims where there may be undue delay or prejudice, bad faith, or futility." *Id.* The Court also noted that "the moderate approach appears to be the one employed by a majority of the district courts tackling this issue and is favored by commentators as well." *Id.* at 2.

I agree. The pleading contemplated by Rule 15, in its current form, is still a responsive pleading—*i.e.,* one submitted "in response to" the adversary's

5

amended claim. Thus the stylistic deletion of the words "in response to" does not seem particularly meaningful. Nor does the abrogation of Rule 13(f) alter the viability of the moderate approach.

It makes little sense to say that one party's amendment, no matter how limited or how late in the litigation, opens the floodgates for an adversary to append to its answer whatever allegations and claims may have occurred to it in the interim. That as-of-right approach would open the door to inappropriate late-stage amendments, leaving no role for the Court in management of the litigation. *See E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002) (noting that the permissive approach "would deprive the Court of its ability to effectively manage the litigation")). As the Seventh Circuit recently held, such an approach "would drastically undermine district judges' control over the pleading process under Rule 15 and would lose sight of Rule 1's instruction to construe the Rules to secure the just, speedy, and inexpensive resolution of civil actions." *Burton v. Ghosh*, 961 F.3d 960 (7th Cir. 2020). I join Judge Martini, the pre-2009 cases in this District, and the Seventh Circuit, and adopt the moderate approach.

Under the moderate approach, the court must first determine the extent to which "the amended complaint changes the theory or scope of the case." The court must then assess whether the breadth of the changes in the amended response "reflect the breadth of the changes in the amended complaint." *Slim CD, Inc. v. Heartland Payment Systems*, Inc., No. 06-cv-2256, 2007 WL 2459349, *6 (D.N.J. Aug. 24, 2007).

PSE&G's amendment reasserted its previously unripe Section 113 CERCLA contribution claim and asserted a breach of contract claim against Con Edison.[2] (Con Edison did not amend its pleading in response to PSE&G's amendment.) This reassertion of the CERCLA contribution claim, of which

---

[2] PSE&G's CERCLA contribution claim was dismissed as unripe in December 2017 because there had been no requisite civil action under § 106 or § 107. (DE 62.) Since then, Newport and Con Edison have asserted CERCLA claims against PSE&G, so there is a potential for contribution.

Newport was on notice because it had been previously asserted, did not substantially alter the scope of the litigation; instead, as to Newport, the amendment only reasserted a claim based on the same facts already involved in the case. Newport's responsive pleading exceeded the boundaries of any such alteration. Newport's pleading might fairly plead counterclaims or defenses to contribution liability, but these new factual allegations go far beyond that. The approximately 40 new factual allegations would re-expand the litigation to include cables separate from and unrelated to the cable at issue. I therefore find that Newport's Pleading is not allowed as of right. It requires either the consent of the opposing party or leave of the court.

### b. Motion to Amend

Newport has cross-moved to amend its pleading *nunc pro tunc* in the event the Court determines that leave was required. (DE 240.) I therefore turn to Newport's cross motion.

Under Fed. R. Civ. P. 15(a)(2), a court may grant leave for a party to amend its pleading "when justice so requires." The Rule explicitly states that "leave [to amend] shall be freely given," and thus courts "have shown a strong liberality ... in allowing amendments under Rule 15(a)." *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 425 (3d Cir.1981) (quoting 3 J. Moore, Moore's Federal Practice ¶ 15.08(2) (2d ed. 1989)). However, a court may deny a motion to amend the pleadings where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) futility of amendment, or (5) repeated failure to correct deficiencies. *See Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962).

Commonly, the Rule contemplates a party's assertion of new claims or defenses. It is liberally designed to ensure that such claims or defenses are heard on the merits, provided that the five countervailing factors do not counsel otherwise. This motion, however, is of a different nature: Newport asserts no new claims, but simply seeks to insert factual allegations into its pleadings for strategic advantage.

7

Because there is undue delay, bad faith, and undue prejudice here, I will deny Newport's motion to amend. This case was filed five years ago, in 2016. (DE 1.) Document discovery was "substantially completed" in November 2019. (Newport Mtn. at 8.) Newport waited over a year after the close of document discovery to plead these additional allegations. During oral argument, PSE&G asserted that the FOIA documents relevant to these claims were necessarily obtained by Newport sometime before May 2020, which is when Newport produced them to PSE&G. At any time thereafter, Newport could have moved to amend its pleading to include these factual allegations, if appropriate.[3] It preferred to wait, opportunistically, until its adversary filed an amended pleading, hoping to rely on an as-of-right theory to circumvent the Court's attempts at case management. If this litigation is a ship, these allegations are stowaways.

While the "mere passage of time 'is an insufficient ground to deny leave to amend,' ... 'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'" *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) (quoting *Cureton v. NCAA*, 252 F.3d 267, 272-73 (3d Cir. 2001)); *see also Fahs Rolston Paving Corp. v. Pennington Properties Dev. Corp.*, No. 03-4593, 2009 WL 3681895, at *9 (D.N.J. Nov. 2, 2009) ("[T]here is no reasonable explanation for the Pennington Defendants' failure to assert their proposed breach of fiduciary duty counterclaim in 2005 when they learned of the facts supporting that claim. Given the lack of a reasonable explanation for the delay, the Court finds that the prejudice that would be suffered by Plaintiff if the Pennington Defendants' motion were granted warrants the denial of same.").

---

[3] Newport includes as exhibits to its motion the documents it relied on in asserting these new factual allegations. It is not clear exactly when Newport obtained these documents. Exhibit 2 is dated June 5, 2019, although that date is not necessarily indicative of when Newport received the document. (DE 241-3 at 2.) Newport notes that it "promptly produced [the relied upon documents] to the Utilities last year, and continues to do so as it receives additional records." (Newport Mtn. at 5).

8

The Utilities point to some suspicious timing. Newport filed this pleading only after the court denied reconsideration Judge Clark's protective order barring broad discovery of all "other leak" information, confining it to incidents that seemed to be the most similar. These new allegations appear to be an attempt to retroactively manufacture "relevance"; the theory presumably would be that the previously-denied discovery is now relevant to allegations in their pleading. The Utilities also contend that they will suffer prejudice from Newport's new allegations in the form of proliferation and confusion of the issues. As Judge Clark has explained, this action arises out of a discrete leak of fluid from the B Line in the Hudson River Section of the Cables. (DE 169 at 13.) Newport's allegations about other cables are not sufficiently relevant to the leak that occurred here, as the court has already ruled. PSE&G also stressed the burden inherent in responding to Newport's Pleading. For example, answering the new allegations and preparing 30(b)(6) witnesses on these topics alone would consume substantial resources.

I pause to comment on what Newport is *not* being denied here. It does not seek to assert any additional legal cause of action or defense, and is not being denied the opportunity to do so. The additional allegations amount to an update or revision to the facts. Such updates are not necessary, and are not rendered necessary by the happenstance of an adversary's having filed a largely unrelated amendment. Nor is the Court prematurely ruling *in limine* as to the scope of causation evidence at trial. While Judge Clark previously ruled on the scope of discovery as to certain cables, he did not foreclose arguments rebutting plaintiff's theory that the leak was caused by Newport. Nothing in this Opinion does that, either. Further, neither Judge Clark's ruling nor this one is intended to foreclose expert testimony as to other potential causes for the leak. At oral argument, counsel indicated that such testimony and reports might be forthcoming; I do not prejudge their appropriateness or admissibility.

I will therefore deny Newport's *nunc pro tunc* motion to amend.

9

### c. Motions to Strike

One drastic option, based on the above reasoning, would be to simply strike Newport's pleading in its entirety. More proportionate and efficient is the option of striking just the offending material, while leaving Newport's pleading otherwise intact.

I have already ruled that Newport was required to seek leave of Court or the consent of its adversary before amending its answer. *See* Fed. R. Civ. P. 15(a)(2); *Patel v. Pandya*, No. 14-8127 (WJM), 2016 WL 3129615, at *3 (D.N.J. June 2, 2016). Newport did not do so. The proper remedy for this error, viewed from one perspective, is simply to grant the Utilities' motions to strike Newport's Pleading, treating it as a nullity. *See Patel*, 2016 WL 3129615, at *3 (striking pleading filed in violation of Rule 15); *Composite Res., Inc. v. Recon Med., LLC*, No. 2:17-cv-01755, 2018 WL 5886530, at *2 (D. Nev. Nov. 9, 2018) (same); *Rogers v. Hartford Life & Accident Ins. Co.*, 2012 WL 2395194, at *1 n. 1 (S.D. Ala. June 22, 2012) ("There is no doubt that striking an improper amended pleading filed without leave of court is appropriate and necessary to enforce Rule 15(a)(2).").

Recall, however, that under the "moderate approach," leave was required under Rule 15 only *because* and *to the extent* the new allegations exceeded what was appropriate in relation to what was novel about the amended pleading to which they responded. And, as a practical matter, the only real dispute between the parties concerns the particular allegations that attempt, by the back door, to circumvent Judge Clark's earlier discovery ruling. So to strike the entire pleading would be draconian and disproportionate to the error.

Under Federal Rule of Civil Procedure 12(f), the district court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). Newport has added two new sections of factual allegations with the headings "The Utilities' Long History of Similar Leaks" and "The Utilities' Knowledge of Systemic

Causes of Dielectric Fluid Leaks." The portion of Newport's Pleading spanning Paragraphs 45 to 76 will be stricken.

There are other new allegations sprinkled throughout this pleading (including Paragraphs 27, 33, 86, 91, 92, 98, and 103). These do not seem to be seriously disputed, and they do not substantially implicate Judge Clark's prior ruling. They will be permitted to remain.

Paragraphs 122 through 129 reassert previously dismissed claims. Counsel confirmed at oral argument that this was done in an abundance of caution, solely to preserve Newport's rights in the event of an appeal. Whether or not that is strictly necessary, these paragraphs will be permitted to remain, with the understanding that the claims are and remain dismissed.

### III.    Conclusion

For the foregoing reasons, I will grant the two pending motions (DE 231, 235) to strike and deny Newport's cross motion (DE 240) to amend *nunc pro tunc*. An appropriate order follows.

Dated: June 9, 2021

/s/ Kevin McNulty

**Kevin McNulty**
**United States District Judge**